# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:07cv275

| | |
|---|---|
| JANICE ANN THOMPSON; and husband TERRY LEE THOMPSON, <br><br> Plaintiffs, <br><br> Vs. <br><br> COVENANT TRANSPORT, INC.; and JACKIE LEONARD GRANGER, <br><br> Defendants. | ORDER |

**THIS MATTER** is before the court on the "Motion for Reconsideration and in the Alternative for Appropriate Relief" (#39) filed by the plaintiff Janice Ann Thompson. In the motion, the plaintiff has requested the court reconsider an Amended Memorandum and Recommendation (#36) filed by the undersigned on April 29, 2008 in which this court recommended to the district court that the plaintiff's Complaint be dismissed with prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The district court has stayed consideration of the Memorandum and Recommendation pending the undersigned's hearing of the plaintiff's Motion to Reconsider (#43). In the motion, Ms. Thompson contends she did not have the mental capacity during the period from August 2007 through May 2008 to understand the warnings and orders directed to her by this court of the potential consequences of her failure to comply with the orders of the court and the Rules of Civil Procedure regarding prosecution of her Complaint and discovery.

These warnings were provided to Ms. Thompson pursuant to <u>Berry v. South Carolina Dept. Of Social Services</u>, 1997 WL 499950, at 6 (4th Cir. 1997) [1] and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975)

An evidentiary hearing was conducted on July 11, 2008 by the undersigned. The plaintiff Janice Ann Thompson appeared in this matter with her attorney, Perry Fisher. The plaintiff Terry Lee Thompson appeared with his attorney, Ron Moore. At the hearing, Ms. Thompson testified and further called as witnesses her previously treating neuropsychologist, Dr. Mark Hill, Ph.D and lay witnesses Terry Lee Thompson, the plaintiff's ex-husband, Rev. Ernest Hayes, Melody Hayes and Karen Anthony. Ms. Thompson also introduced into evidence a group of medical records and reports and a DVD of an interview of her family physician.

**I.  Evidence and Testimony Presented**

    **A.**  <u>Documentary Evidence</u>

Documentary evidence was presented by Ms. Thompson without objection. Those documents consisted of copies of a settlement brochure which had been forward to representatives of the defendant on July 27, 2006 by Mr. Moore who was, at that time, representing both Mr. Thompson and Ms. Thompson in this matter. (Plaintiff's Exhibit PT-1) The exhibit included medical records of treatment of Ms. Thompson for the injuries that she contended she suffered in the accident described in the plaintiff's Complaint. Also presented was a DVD which contained an

---

[1] Due to the limits of CM-ECF copies of unpublished opinions are incorporated herein by reference to the Westlaw citation.

interview of Dr. Charles D. Lefler. (Plaintiff's Exhibit PT-2) Dr. Lefler is a physician who practices internal medicine in Brevard, NC. Dr. Lefler was the principal treating physician of Ms. Thompson. The undersigned has examined both the documents presented and the interview of Dr. Lefler as presented in the DVD.

### B. Testimony

Mr. Thompson testified that after the accident of June 29, 2004, he noticed that his wife did not have the mental capacity that she had formerly possessed. He described her as a detail person who, after the accident, could not take care of details and who began "letting things go" including allowing the dwelling house where she and Mr. Thompson had formerly resided to go into foreclosure. Rev. Ernest Hayes testified that previous to the accident Ms. Thompson was a strong-willed focused person. After the accident, he found her to be depressed and disillusioned. Rev. Hayes' wife, Melody testified that previous to the accident Ms. Thompson was a highly detailed person who, after the accident, had become anxious and fearful. Ms. Anthony testified that she had met Ms. Thompson after the accident and developed the opinion that Ms. Thompson was not a "high functioning individual" but there had been marked improvement.

Dr. Hill testified that he treated Ms. Thompson in February 2005 and as a part of that treatment administered various tests to Ms. Thompson. It was Dr. Hill's opinion that, based upon his examination of her in February 2005 which was the last time Dr. Hill had seen Ms. Thompson, she would recover from her injuries. An examination of the treatment records of Dr. Hill shows that in January and February

of 2005 Dr. Hill performed extensive psychological testing of Ms. Thompson, including but not limited to, the Wechsler Adult Intelligence Scale, the Wechsler Memory Scale, the California Verbal Learning Test, and the Minnesota Multiphasic Personality Inventory and numerous other psychological tests. Dr. Hill reported that Ms. Thompson's mental processing speed was grossly intact and she was average in how quickly she translated numbers to a special symbolic code. He further reported that although Ms. Thompson's responses revealed difficulties in maintaining her attention over time, her motor and sensory abilities did not suggest the presence of lateralized brain dysfunction. The results of the testing further showed Ms. Thompson had expressive and receptive language skills which were unremarkable for her age and her visuospatial skills were strong. Ms. Thompson's testing on the Wechsler Memory Scale-111 was within normal limits and her visual memory skills were intact for her age. Other testing showed Ms. Thompson had a Full Scale IQ of 107. She exhibited no particular deficits in regard to executive functioning of the brain. In his final conclusion and recommendation, Dr. Hill reported Ms. Thompson's performance on the neuropsychological evaluation was largely within the average to high average range and she demonstrated a strong visual working memory. Her processing speed was grossly intact, her language skills were expressive and consistent with her age and education, her visuospatial abilities were above average and her measured intelligence and higher-level reasoning were within broad limits of the normal range. Ms. Thompson's skills, which had declined post-injury, were essentially intact, her verbal and visual memory skills were within

normal limits for her age, and as of the date of Dr. Hill's report Ms. Thompson was showing positive signs of recovery. Dr. Hill further gave his opinion that if Ms. Thompson had been represented by an attorney she would have been well-able to have participated in the litigation in this matter during the period of 2007 through 2008. It was further his opinion that without representation by an attorney she could have experienced difficulties.

Ms. Thompson testified she was a critical care nurse at Memorial Mission Hospital in Asheville, NC at the time of the automobile accident. After the accident, she and her husband retained Mr. Moore to represent them but after the Complaint was filed in this matter, Mr. Moore told Ms. Thompson she would have to find another attorney who was experienced in handling matters in federal court. Ms. Thompson stated she contacted five attorneys but none of them were interested in representing her. The undersigned asked Ms. Thompson why she had ignored the repeated warnings which had been provided in writing to her directing she comply with the orders of the court, the Local Rules and the Rules of Civil Procedure. Ms. Thompson replied that dealing with this matter forced her to relive the accident over again. As a result, she chose to focus herself on moving forward with her life and not to the obligations of complying with the court's orders and rules. She stated the thought of going to court in this case was not appealing to her and she had decided to deal with her divorce from her husband, the foreclosure of her home, and everyday life than to not comply or respond to the orders that had been entered by the undersigned in regard to her failure to prosecute this case. When asked by the court

as to whether or not Ms. Thompson herself was of the opinion she had sufficient mental capacity during the period from August 2007 to May 2008 to understand the orders of the court, the rules of court, and to go forward with this matter, it was Ms. Thompson's opinion that she possessed such mental capacity during the applicable period. Ms. Thompson requested the case not be dismissed and that the case be allowed to go forward.

An examination of the records presented as plaintiff's PT-1 shows Mr. Moore had represented , in writing, to the defendants' representative on July 27, 2006 that Ms. Thompson was attending the University of North Carolina at Asheville where she was attempting to earn a degree in Art Therapy. In a preliminary report which was dated June 6, 2006, an economist reported that as of that date Ms. Thompson was a student at the University of North Carolina at Asheville which she was attending with the intent to complete a four year degree. It was also referenced Ms. Thompson planned on attending a graduate program thereafter with the objective of earning a master's degree in Art Therapy. It was assumed by the economist Ms. Thompson would graduate from college in 2009 and then enter a graduate program and complete her master's degree in 2011.

An examination of the records in this cause show that in a motion filed by Mr. Moore on behalf of Mr. Thompson on April 14, 2008 (#30), Mr. Moore states:

> The undersigned withdrew as counsel for plaintiffs in the state court proceeding and prior to the removal of this cause to Federal Court for reasons which include, but are not limited to, the fact that the plaintiff Janice Ann Thompson rejected a six figure settlement offer with unreasonable expectations regarding the future direction of the claim.

Further found in the filings in this matter is the affidavit of Cathie St. John-Ritzen. Ms. Ritzen was appointed as the guardian ad litem for Ms. Thompson when a Petition for Adjudication of Incompetence and Application for Appointment of Guardian ad Litem was filed by Mr. Thompson alleging that Ms. Thompson was incompetent. This petition was filed at the urging of the court after a hearing in December of 2007 where Mr. Thompson presented contentions that Ms. Thompson did not have sufficient mental capacity as a result of the injuries she sustained in the automobile accident to prosecute this case. Ms. St. John-Ritzen was a registered nurse in the state of Missouri during the period from 1966 through 1984. She is now an attorney practicing law in North Carolina. In her affidavit, Ms. St. John-Ritzen states that she went to the home of Ms. Thompson on January 30, 2008. She found that Ms. Thompson was cordial, alert, oriented, and further states:

> During my meeting with her, she discussed the accident she was involved in, her medical treatment, reviewed her resume and the classes she had recently attended and completed, discussed her attempts at employment since the injury, and her current job prospect at Mission Hospital in Asheville. I reviewed an e-mail to Ms. Thompson from her contact in the nursing department at Mission Hospital to verify the job prospect. We discussed the lawsuit that was pending and she explained that she was negotiating directly with the defendants. ...I asked her why she had not appeared or kept in touch as required and she responded that she did not believe she had to take further steps because she had not been subpoenaed.

**II. Applicable Law and Discussion**

**A. <u>Applicable Rule</u>**

The plaintiff, in her motion, has stated that she has moved the court for reconsideration, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for

relief from the Amended Memorandum and Recommendation filed by the undersigned recommending that the plaintiff's Complaint be dismissed with prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure (#36). Rule 60(b) of the Federal Rules of Civil Procedure affords relief only from a judgment, order, or proceeding which is final. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462 (4th Cir. 1991) A Memorandum and Recommendation made by a Magistrate Judge is not a final order. It is only what the title implies; a recommendation. It is at best an interlocutory order that does not represent the entry of judgment adjudicating all of the claims and the rights and liabilities of all of the parties. Rule 54(b) of the Federal Rules of Civil Procedure in regard to such orders states in part as follows:

> Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In Pharmanetics, Inc. v. Aventis Pharmaceuticals, Inc., 2005 WL 6000369 (E.D.N.C. 2005) Chief Judge Flanagan set forth the applicable law in regard to a motion for reconsideration of an interlocutory order.

> Under this rule, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991).
>
> "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* at 514. Rather, the resolution of such motions is

-8-

"committed to the discretion of the district court." Id. at 515. As a means of guiding that discretion, courts have looked to "doctrines such as law of the case," under which prior dispositive order must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. (Quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)).

Similarly, courts applying Rule 54(b) have borrowed factors from Rule 59(e) and Rule 60(b), which include (1) evidence not previously available has become available, (2) an intervening change in the controlling law, (3) a clear error of law or manifest injustice, (4) mistake, inadvertence, surprise or excusable neglect, or (5) any other reason justifying relief from the operation of the judgment. See Fayetteville Investors, 936 F.2d at 1469 (noting use by some district courts of reasons set out in Rule 60(b) in deciding motions to reconsider under Rule 54(b)); Superior Bank v. Tandem Nat'l Mortg., 197 F.Supp.2d 298, 332 (D.Md.2000) (citing and referencing to Rule 59(e) and Rule 60(b) factors).

The undersigned will apply the lower standard of Rule 54(b) of the Federal Rules of Civil Procedure in reconsidering the Amended Memorandum and Recommendation.

### B. Indiana v. Edwards

In considering the Motion for Reconsideration, the court has carefully reviewed the recent Supreme Court decision in Indiana v. Edwards, ___ U.S. ___, 2008 WL 2445082 (June 19, 2008), which dealt with the sixth amendment implications of a criminal defendant who was competent to assist counsel in his own defense, but not competent to act as his own counsel. The Court in Edwards noted that

> insofar as a defendant's lack of capacity threatens an improper conviction .... self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial.

Id., 2008 W.L., at 10. Criminal proceedings, however, rise to a level that simply is not present in civil litigation: in a criminal trial, a defendant's liberty and perhaps life are in jeopardy. The Court of Appeals for the Fourth Circuit has long held that

> An individual unquestionably has the right to litigate his own claims in federal court, before both the district and appellate courts. *See* 28 U.S.C.A. 1654 (West 1994) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."); *United States v. Lawrence*, 605 F.2d 1321, 1324 (4th Cir.1979) ("Under [ § 1654] ... a [litigant] in federal court has long been guaranteed the right to self-representation...."). This right "reflects a respect for the choice of an individual citizen to plead his or her own cause." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990). It "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the *desiderata* of a particular case." *Id.*

Myers v. Loudoun County Public Schools, 418 F.3d 395, 400 (4th Cir. 2005). In criminal proceedings, the court has the option of appointing counsel for pro se defendants who do not possess the competency to proceed. Edwards, supra. In civil actions, this option is simply not available, and to read Edwards as applying to civil cases would stymy civil litigation. Indeed, a great deal of the civil litigation handled by federal courts is *pro se* civil litigation filed by prisoners, many of whom suffer from severe mental illnesses. Thus, the court cannot find that Edwards would extend to civil litigation inasmuch as civil litigation only involves a litigant's property interest.

    **C.**    **Discussion**

The first factor to consider is whether or not evidence not previous available to the plaintiff Ms. Thompson has now become available. The undersigned finds that evidence which was available to Ms. Thompson and which has now been made

available to the court shows Ms. Thompson, at all times during the period from August 2007 to May 2008, possessed more than sufficient mental capacity to understand the warnings and directives of this court and to comply with such. She also possessed sufficient mental capacity to understand the Local Rules and the Federal Rules of Civil Procedure. In January and February of 2005, Dr. Mark Hill performed what the undersigned considers as being an exhaustive examination of the mental capacity of the plaintiff. Dr. Hill used appropriate and extensive testing procedures so that he would have sound grounds for the development of his opinions and recommendations. As stated previously, Ms. Thompson performance on these tests was within average to the high average range for her age and her verbal and visual memory skills were generally within normal limits. Her IQ was 107. The report of Dr. Hill was not provided to the undersigned by either the plaintiff or the defendant in December of 2007 when this court conducted a hearing and was presented with the contention of Mr. Thompson that Ms. Thompson's injuries had left her with insufficient mental capacity to prosecute her Complaint. As a result of the statements made to the undersigned at that hearing this court stayed the action pending a determination by a state court of the competency of Ms. Thompson. If the undersigned had been provided with Dr. Hill's report, a stay order would not have been entered. The report addresses the very issue with which this court was concerned at that time and which the undersigned again addresses now. Clearly, in February of 2005 Ms. Thompson possessed more than sufficient mental capacity to participate in this litigation either with the assistance of counsel or acting as her own

attorney. There has not been any evidence presented that her mental condition has deteriorated since the date of the report. Indeed, the evidence indicates otherwise. In a letter written by Mr. Moore to the defendants' representative dated July 27, 2006, Mr. Moore reports that Ms. Thompson is attending the University of North Carolina at Asheville seeking a bachelor's degree in Art Therapy. In the materials, an economist states that it was Ms. Thompson's intent to obtain a master's degree in that field. A person who is mentally capable of attending a leading university to obtain a bachelor's degree and with hopes of obtaining a master's degree would be a person who would have sufficient mental capacity to understand the court's orders, the Local Rules and the Rules of Civil Procedure.

In regard to factor No. 2, there has not been any evidence or argument showing that there has been any intervening change in the controlling law since the undersigned filed the Amended Memorandum and Recommendation other than Indiana v. Edwards, _____ U.S. _____, 2008 WL 2445082 (June 19, 2008) which does not apply to this civil matter.

Factor No. 3 for the undersigned to consider is whether or not there has been a clear error of law or manifest injustice. In considering whether the answer to this question can be answered in favor of the plaintiff, the undersigned has considered the four factors that the undersigned considered in recommending the dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure as set forth in Hillig v. Commissioner, 916 F.2d 171, 174 (4th Cir. 1990)  Based upon Ms. Thompson's testimony there is now not any doubt that Ms. Thompson is personally culpable for

failing to prosecute this matter, failing to comply with the Rules of Civil Procedure, and failing to comply with the orders of the court. In her testimony, Ms. Thompson stated that it was her decision to deal with her pending domestic proceeding and foreclosure proceeding rather than the proceeding in this court. The defendant has suffered prejudice in regard to this matter. This case is still in the same position in regard to preparation for trial as it was when it was filed in June, 2007. From the evidence presented at the hearing of the plaintiff's motion, there is now not any doubt that Ms. Thompson intentionally proceeded in a dilatory fashion in this case. This court knows of no other alternative measures or any no less drastic sanction than dismissal which would be effective.

In regard to whether or not there was any mistake , inadvertence, surprise or excusable neglect, it is the conclusion of the undersigned that the evidence does not show that any of those things occurred.

In regard to factor No. 5, that is whether or not there is any other reason justifying relief from the potential operation of the Amended Memorandum and Recommendation, the conclusion of this court is that there is not. One of the most important tasks that has been assigned to the undersigned is the task of case management. The goal of the United States District Court in Asheville is to attempt, if at all possible, to schedule and have a trial of any case that has been filed within one year from the date of the filing of the answer. The answer in this case was filed on August 15, 2007. As a result of the dilatory actions of the plaintiff, there has not been any discovery that has been answered or documents produced, including the

plaintiff producing the materials required to be provided pursuant to Rule 26 of the Federal Rules of Civil Procedure. The plaintiff intentionally ignored repeated orders of the court to comply with the rules of discovery. Should the undersigned now recommend that the defendant's motion to dismiss be denied would be a manifest injustice, not only to the defendant but to other litigants who expect the court to manage cases fairly and equally. All litigants in the United States District Court for the Western District of North Carolina have a right to expect that there will be an expeditious and impartial application of the rules and laws regarding case management.

A review of the testimony and evidence in this case indicates that over a ten month period, Ms. Thompson was repeatedly warned by the court that her attendance at hearings and participation in discovery was mandated. She was warned her failure to comply would result in a recommendation that her action be dismissed. Only after this court entered the Amended Memorandum and Recommendation did Ms. Thompson take any action. Ms. Thompson's counsel has argued that she lacked the mental ability to participate in this matter as her own counsel, but a review of the evidence presented does not support such a contention. The evidence as to her mental capacity is to the contrary. In addition, it appears she participated in two other legal proceedings during the same period. Ms. Thompson testified with clarity that she was at all times competent to handle her own affairs. While Ms. Thompson testified she had a fear of driving to court, such testimony was less than credible in that it appears she was able to travel to the University of North Carolina at Asheville to attend college. To do so, she would have to come within one-half mile of the United States

Courthouse in Asheville, NC where this case is pending. Her testimony that she was unable to secure the services of an attorney is also not fully credible. An examination of any phone book shows multiple listings of attorneys who are advertising their services to represent persons such as the plaintiff who are injured in automobile accidents. The fee arrangements in these matters is usually on a contingent fee basis which does not require a party to pay any attorney fees unless a recovery is obtained.

Having reconsidered the entry of the Amended Memorandum and Recommendation in this matter and finding that no evidence has been presented under the standard as set forth under Rule 54(b) which would change such recommendation, the Motion for Reconsideration will be allowed but the relief sought therein will be denied.

## III. Request for Alternative Relief

In Ms. Thompson's motion she requests that should the court be inclined to dismiss the plaintiff's Complaint, that such dismissal be without prejudice so that the plaintiff may refile the action. Should the undersigned allow such alternative relief, the effect would be that Ms. Thompson's action would, by operation of law, be dismissed with prejudice. Ms. Thompson may be operating under the mistaken assumption that Rule 41(a) of the Federal Rules of Civil Procedure contains the same provisions as Rule 41(a) of the North Carolina Rules of Civil Procedure. Rule 41 of the North Carolina Rule provides that an action voluntary dismissed without prejudice may be filed again within one year. Rule 41(a) of the Federal Rules of Civil Procedure does not contain that language. The accident which allegedly caused the

personal injuries of the plaintiff was described in the plaintiff's Complaint as occurring on June 29, 2004. (#1-2) This matter is pending in the United States District Court based upon diversity jurisdiction. 28 U.S.C. § 1332 and 1441(a)  The statute of limitations that would be applied is the one of the state where the accident occurred, that being the state of North Carolina.  N.C.G.S. § 1-52(16) provides for a three-year statute of limitations.  A recommendation that the plaintiff's Complaint be dismissed without prejudice would, in all likelihood, be a futile act.  As a result, the undersigned will not recommend that the alternative relief sought be granted.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Ms. Thompson's Motion to Reconsider is **GRANTED**, and having reconsidered the entry of the Amended Memorandum and Recommendation based on the evidence and arguments presented, the undersigned respectfully reaffirms the Amended Memorandum and Recommendation, and **DENIES** the relief sought in the instant motion.  The undersigned incorporates herein by reference this Order into the Amended Memorandum and Recommendation.

Respective counsel are reminded that the 10 day period for filing specific written objections to the Amended  Memorandum and Recommendation and to this Order commences with the filing of this Order.

Signed: July 23, 2008

_____
Dennis L. Howell
United States Magistrate Judge